UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
KONSTANTINE SOFRONIS,

                                Plaintiff,

        -against-

MICHAEL J. ASTRUE,
COMMISSONIER OF SOCIAL SECURITY,

                               Defendant.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**

09-CV-3713 (ENV)

**VITALIANO, D.J.**

      Plaintiff Konstantine Sofranis seeks review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under the Social Security Act. The parties have filed cross-motions for judgment on the pleadings. Plaintiff argues that the Commissioner made several errors in his decision to deny him benefits and that the decision should be reversed and his claim remanded for the calculation of benefits, or, in the alternative, for further proceedings. Defendant counters that the decision was supported by substantial evidence and that the correct legal standards were applied. For the reasons set forth below, the Court denies the Commissioner's motion for judgment on the pleadings and grants Sofranis's cross-motion to the extent that this case is remanded for further administrative proceedings.

## I. BACKGROUND

### A. Procedural History

      Sofranis filed his application for disability benefits on December 12, 2005, alleging a disability onset date of January 8, 2005, when he was working as a marble countertop installer and was injured in an on-the-job motor vehicle accident. His initial application was denied by

1

the Social Security Administration ("SSA") on March 21, 2006. On August 15, 2007 and November 5, 2007, hearings were held before Administrative Law Judge ("ALJ") Manuel Cofresi. On January 11, 2008, the ALJ issued a decision that plaintiff was not disabled and denied him benefits. Sofronis appealed this decision to the Appeals Council, which upon review, vacated and remanded the case to the ALJ. On March 19, 2009, the ALJ issued a decision, again finding that plaintiff was not disabled and denying him benefits. The hearing record included testimony from Sofronis, medical expert Dr. Louis Lombardi, and vocational expert Amy Leopold. The ALJ's decision became final on June 12, 2009 when the Appeals Council denied plaintiff's request for review. Plaintiff filed the instant action on August 20, 2009.

### B. Plaintiff's Medical History

The following facts are drawn from Sofronis's administrative record. Sofronis was injured in a motor vehicle accident while riding as a passenger, and became disabled from working on January 8, 2005. After the accident, Sofronis was taken to the emergency room at Albany Medical Center. Plaintiff had been ambulatory at the scene of the accident, and upon examination, plaintiff displayed tenderness to his right (Tr. 159) and left (Tr. 154) side abdomen, right ankle, lower cervical spine, and upper thoracic spine. X-rays of the chest, cervical, lumbar and thoracic spine, pelvis and right ankle were conducted and they showed no evidence of acute trauma, fractures, dislocations or malalignments. CT-scans of the abdomen, pelvis, cervical spine and head were unremarkable and did not reveal any fractures. The attending doctor, Dr. Bruce Ushkow, determined that plaintiff required a repeat chest exam and a complete cervical spine exam to rule out ligamentous injury. Plaintiff was not prescribed any medication and was released the same day. (Tr. 139-170)

On January 12, 2005, plaintiff saw Dr. Steven Touliopoulos at University Orthopedics of

New York. Plaintiff exhibited limited dorsiflexion and plantar flexion, tenderness over the Achilles tendon insertion site and medial malleolar of the right ankle, positive tenderness over the deltoid ligaments, and limited lumbar flexion. Dr. Touliopoulos's assessment was posttraumatic internal derangement of the lumbar spine, posttraumatic internal derangement of the left shoulder, posttraumatic internal derangement of the right ankle. Dr. Touliopoulos recommended physical therapy for plaintiff's left shoulder and lower back, requested MRIs for plaintiff's left shoulder, right ankle and lumbar spine, and determined that plaintiff was totally disabled from his employment. At a follow-up examination on February 2, 2005, Dr. Touliopoulos noted ligamentous instability in plaintiff's right ankle and tenderness anterolaterally, and plaintiff was using a cane. Neurovascular examinations of plaintiff's extremeties were intact, and he had no motor or sensory deficits. He did display a limited range of motion in the lumbar spine with bilateral muscle spasms in the lower lumbar paraspinal muscles. Dr. Touliopoulous recommended plaintiff continue with a conservative treatment of physical therapy and to continue taking Vicodin. (Tr. 203).

Dr. Touliopoulos continued to examine and treat plaintiff through July 2007. His diagnoses of occult posttraumatic left shoulder instability, occult posttraumatic right ankle lateral ligament instability, occult posttraumatic left shoulder instability with secondary impingement syndrome, and lumbar strain with low back symptoms two symptomatic posttraumatic fibromas remained largely unchanged throughout his treatment relationship with plaintiff. Dr. Touliopoulos performed arthroscopic surgery on plaintiff's left shoulder on September 29, 2005. At his first post-surgical follow-up visit on October 10, 2005, Dr. Touliopoulos recommended that plaintiff continue with conservative measures for the left shoulder. Dr. Touliopoulos consistently found plaintiff to be completely disabled from work and prescribed a regimen of

pain killers and physical therapy.

Dr. Touliopoulos referred plaintiff to his associate at University Orthopedics of New York, Dr. Andrew Merola, for a lower back examination on June 6, 2005. Dr. Merola reviewed plaintiff's MRI scans, finding them normal, and conducted a physical examination. Dr. Merola's impression was that plaintiff had no focal deficits or deficiencies an there were no neurological findings or symptoms. Plaintiff required only symptomatic treatment but Dr. Merola recommended that plaintiff continue to see Dr. Touliopoulos for his other injuries. (Tr. 197).

Another associate of Dr. Touliopoulos, Dr. Kioomars Moosazadeh, was present at some of Dr. Touliopoulos's examinations and continued to conduct follow-up examinations with plaintiff on his own through June 2008. Throughout this period, Dr. Moosazadeh's examination results and diagnoses remained largely unchanged from those of Dr. Toulipoulos, and he continued to prescribe physical therapy and pain medications. He also determined that plaintiff should have right ankle surgery (Tr. 293) and that plaintiff was disabled from his employment. (Tr. 334). In a medical source statement, dated February 20, 2009, Dr. Moosazadeh found that plaintiff could sit for one hour continuously before needing to alternate postures and two hours total in an eight hour work day. He could also stand or walk for one hour before needing to alternate postures, and could only stand or walk for one hour total in an eight hour work day. Plaintiff needed to rest lying down or reclining for five hours in an eight hour workday and could only occasionally lift six to ten pounds, and frequently lift five pounds or less. These conditions had existed and persisted with these restrictions since the injury occurred on January 8, 2005. (Tr. 344-46).

On July 19, 2006, Drs. Toulipoulos and Moosazadeh found that a MRI of plaintiff's foot and ankle showed nondisplaced fractures of the first, second, third and fourth metatarsals with

underlying bone marrow edema and surrounding soft tissue edema and a low-intensity signal between the second and third metatarsal which could represent a Morton's neuroma (a thickening of nerve tissue in the foot). (Tr. 265). A February 12, 2007 MRI of plaintiff's left shoulder showed mild distension of the subactomial bursa and degenerative anterior glenoid labrum. (Tr. 294-95).

On February 24, 2006, plaintiff saw Dr. Yakov Perper, a pain specialist at University Orthopedics of New York. His impression was that plaintiff had a few conditions that can cause pain. He opined that it could be facet joint arthritis, sacroiliac joint arthritis or just ligament or muscular pain in his lower back, and recommended a sacroiliac joint injection and use of Naprosyn and Lidoderm patches. (Tr. 255). Dr. Perper continued to examine and treat plaintiff through April 2008 and prescribed pain killers for plaintiff's for the pain in his left knee, thighs and lower back. (Tr. 332).

On August 22, 2006, Dr. Charles De Marco saw plaintiff at University Orthopedics of New York. Upon examination, he found that plaintiff had recurrent left shoulder symptoms, occult right ankle posttraumatic instability, lumbar strain with posttraumatic symptomatic myofaciitis, and consequential left knee patellafemoral syndrome, rule out internal derangement. (Tr. 268). When he examined plaintiff again on September 21, 2006, his findings were largely the same and he told plaintiff to continue taking Vicodin. (Tr. 272). On April 9, 2008, Dr. DeMarco noted that plaintiff was totally disabled from his work duties. (Tr. 331)

Plaintiff also met with consultative examiners Dr. Kenneth E. Seslowe, Dr. Mohammad Asif Iqbal, Dr. E. Santos and Dr. Michael J. Katz, whose diagnoses and prognoses varied both amongst themselves and with plaintiff's treating physicians. After his March 15, 2005 examination, Dr. Seslowe opined that plaintiff's ankle and lumbosacral spine strains had

resolved and that he still had a mild strain of the left shoulder, leaving him with a mild partial disability. Dr. Seslowe determined that plaintiff could do light work, not requiring lifting more than 30 pounds, and recommended that plaintiff continue with three weeks of physical therapy after which he expected plaintiff could return to full work. (Tr. 202). When plaintiff returned to Dr. Seslowe for a second examination on August 15, 2005, the doctor's impression was that plaintiff had a resolved lumbosacral and right ankle sprains, and a mild impingement of the left shoulder leaving him with a mild partial disability. Dr. Seslowe noted he would authorize arthroscopic surgery on the left shoulder and that plaintiff would have difficulty working with his left arm for lifting more than 20 points or lifting above shoulder level. (Tr. 195-96).

On February 28, 2006, Dr. Iqbal found that X-rays of the left shoulder and right ankle were unremarkable, and x-ray of the lumbosacral spine showed Schmorl's nodes and straightness of the lordotic curve. (Tr. 231). After examination, Dr. Iqbal diagnosed plaintiff with left shoulder pain secondary to the motor vehicle accident, back pain and right ankle pain. Dr. Iqbal concluded that plaintiff had no limitation of sitting, standing, or walking but may have had a moderate limitation of prolonged walking, and moderate to severe limitation with lifting mild to moderate weight by the left upper extremity and should therefore was advised to avoid any kind of heavy lifting. (Tr. 232).

On March 14, 2006, Dr. Santos completed a physical residual functional capacity assessment. He found that the plaintiff was capable of sedentary work. Plaintiff could occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than that. In an 8 hour workday, he could stand and/or walk, with normal breaks, for at least 2 hours and sit about 6 hours. His ability to push and/or pull was limited in the lower extremities. Dr. Santos found that when compared to the medical evidence, plaintiff's statements credible regarding his

multiple orthopedic problems and his inability do prolonged walking, standing or bending. (Tr. 236-242).

Dr. Katz's March 12, 2007 examination of plaintiff resulted in a diagnosis that plaintiff had resolved right ankle sprain and resolved lumbosacral strain. He opined that plaintiff no longer required active physical therapy or orthopedic care. He stated further that plaintiff was not disabled at the time and was capable of resuming his work duties. (Tr. 300).

After his insured period, plaintiff was seen by another consultative examiner, Dr. Stanley Mathew, on September 27, 2008. Dr. Mathew diagnosed plaintiff with chronic low back pain secondary to myofascial pain, chronic left shoulder pain secondary to myofascial pain, chronic right ankle pain secondary to myofascial pain, and chronic left knee pain secondary to myofascial pain. In Dr. Mathew's opinion, plaintiff was moderately limited for walking, standing, climbing, lifting, squatting, and bending. (Tr. 315). In his "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," Dr. Mathews indicated that plaintiff could occasionally lift and carry up to ten pounds and never more than that; sit for three hours, stand and walk for one hour at one time without interruption; sit for six hours, stand for three hours, and walk for two hours in an eight hour work day. Plaintiff also needed a cane to walk, and that cane was medically necessary. Plaintiff could frequently reach, handle, finger, feel, push and pull with both hands, and could occasionally operate foot controls with each foot. He could occasionally climb stairs and ramps, balance, stoop, kneel, but could not climb ladders or scaffolds, crouch or crawl. He could do daily activities including shopping and simple meal preparation. (Tr. 318-24).

## II.  STANDARD OF REVIEW

In reviewing a denial of disability benefits under 42 U.S.C. § 405(g), the Commissioner's

7

determination will be reversed only if "there is a reasonable basis for doubt whether the ALJ applied correct legal principles," or if it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). Substantial evidence is "more than a mere scintilla" and instead "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)).

The SSA has promulgated a five-step sequential analysis that an ALJ must use to determine whether a claimant qualifies as disabled. See, e.g., Rosa, 168 F.3d at 77. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the ALJ must determine whether the claimant has a "severe" impairment that limits his work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii). Third, if such an impairment exists, the ALJ evaluates whether the impairment meets or equals the criteria of an impairment identified in the Commissioner's appendix of listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listed impairment, the ALJ must resolve whether the claimant has the residual functional capacity to perform his past relevant work.[1] 20 C.F.R. § 404.1520(a)(4)(iv). This step requires that the ALJ first make an assessment of the claimant's residual functional capacity generally. 20 C.F.R. § 404.1520(e); id. § 404.1545. Fifth, if the claimant cannot perform his past work, the ALJ determines whether there is other work that the claimant could perform. 20 C.F.R. § 404.1520(a)(4)(v). In making his determination by this process, the Commissioner must consider four factors: "'(1) the objective medical facts; (2)

---

[1] Under the regulations, "past relevant work" is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1).

8

diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.'" Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The claimant bears the burden of proof as to the first four steps. See, e.g., Eschmann v. Astrue, 2011 U.S. Dist. LEXIS 52061, at *29 (E.D.N.Y. May 16, 2011) (citing Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). If the claimant proves that his impairment prevents him from performing past relevant work, the burden shifts to the Commissioner at the final step. Id. In the fifth step analysis, the Commissioner must show that the claimant retains the residual functional capacity to perform a certain category of work, such as light work or sedentary work, and that such work is available in the national economy. Curry v. Apfel, 209 F.3d 117, 122-23 (2d Cir. 2000). However, SSA regulations have since limited the step five burden on the Commissioner, removing the requirement that the Commissioner show residual functional capacity, see 20 C.F.R. § 404.1560(c)(2). These regulations, significantly, "abrogated Curry v. Apfel at least in cases where the onset of disability was after the regulations were promulgated on August 26, 2003." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). Because Sofronis's onset of disability was in 2005, the new SSA regulations lightening the Commissioner's burden apply.

### III. DISCUSSION

The ALJ undertook the five-step analysis as required, and found that plaintiff: (1) did not engage in substantial gainful activity, (2) had medically determinable severe impairments, (3) did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, and (4) had the residual function capacity to perform a full range of sedentary

work but was unable to perform any past relevant work. "Sedentary work is the least rigorous of the five categories of work recognized by SSA regulations. These include 'very heavy', 'heavy,' 'medium,' 'light,' and 'sedentary.'" Schaal v. Apfel, 134 F.3d 496, 501 n.6 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2). Sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996). It also involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). At the fifth step, the ALJ concluded that plaintiff was not disabled even though plaintiff could no longer perform his past relevant work.

In reaching this conclusion, the ALJ did not rely on correct legal principles as articulated by SSA regulations or case law. First, the ALJ did not properly apply the "treating physician rule" which gives controlling weight to a treating physician's opinion when it is "well supported by medical findings and not inconsistent with other substantial evidence." Rosa, 168 F.3d at 79-80. The rule "presumes that more rather than less weight is properly accorded to the doctor who has most closely attended a claimant." Foxman v. Barnhart, 157 F. App'x 344, 347 (2d Cir. 2005). Indeed, treating physicians' reports shall be given controlling weight where they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). If the treating physicians' reports conflict with "other substantial evidence in the record," then "the less consistent that opinion is with the record as a whole, the less weight will be given . . . A treating physician's statement that the claimant is disabled cannot itself be determinative." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(2)).

Plaintiff's treating physicians were Drs. Touliopoulos, Moosazadeh, and De Marco. The administrative record in this case reveals quite clearly that throughout the three years of treatment, the three physicians consistently opined that plaintiff was "totally disabled from his employment." Their opinions were supported by objective medical testing, evidenced in voluminous medical records, including reports from several MRIs and other tests. The ALJ found that "the record fail[ed] to present sufficient evidence that claimant is incapable of sustained sitting activity." While plaintiff's treating physicians did not specifically offer an opinion as to his ability to perform sedentary work to be accorded weight in the ALJ's determination, it is enough that the treating physicians repeatedly found he was "totally disabled" from work duties. Foxman, 157 F. App'x at 346. In the teeth of such a finding, the ALJ may, at best, have concluded that the findings were not sufficiently expressed as to whether "totally" included sedentary work. If so, the ALJ was required to develop the record further, see, e.g., Schaal, 134 F.3d at 505, which he did not do. This too is reversible error.

Although the ALJ is entitled to give greater weight to a nontreating physician than to the treating physician, the decision to do so "is based upon proper consideration of the following factors: (1) the frequency of examination and the length, nature, and extent of the treatment relationship, (2) the evidence supporting the treating physician's opinion, (3) the consistency of the opinion with the record as a whole, (4) whether the opinion is from a specialist, and (5) any other factors brought to light that tend to contradict the treating physician's opinion." Foxman v. Barnhart, 157 F. App'x 344, 346-47 (2d Cir. 2005) (citing 20 C.F.R. § 404.1527(d); Halloran v. Barnhart, 362 F.3d at 32. "In analyzing a treating physician's report, 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'" Rosa, 168 F.3d at 79.

11

Applying these factors, the administrative record in this case reveals that the medical reports of the treating doctors should not have been disregarded. Dr. Touliopoulos treated Sofronis for three years, including performing arthroscopic surgery on plaintiff's left shoulder on September 29, 2005. He performed MRIs to track plaintiff's progress over the years of treatment. And his conclusion never changed. He found that plaintiff was disabled from his employment. Dr. Moosazadeh's also concluded that Sofronis was disabled, as did Dr. DeMarco. In response, the ALJ's report simply stated the following:

> The record ... contains reports by several consultative examiners, including Dr. Seslowe, Dr. Katz, Dr. Iqbal and Dr. Mathews, all of whom concluded that the claimant was not disabled. In light of this evidence it is reasonable to conclude that the opinions of Dr. Touliopoulos and Dr. Moosazadeh are not supported by substantial evidence. In fact, there is substantial evidence to contradict their opinions. Accordingly, they cannot be granted great or controlling weight.

(Tr. 23). This finding misses the mark. Again, inconsistencies amongst treating and nontreating physicians, like incompleteness of findings, require the ALJ to seek more information from those doctors in an attempt to fill in gaps in the administrative record. Rosa, 168 F.3d at 79. The ALJ did not attempt to do so. Further, other than Dr. Seslowe, who examined plaintiff twice, the other consulting doctors only examined plaintiff on one occasion. Such one-time assessments should not be considered "substantial evidence" under the treating physician rule of 20 C.F.R. § 404.1527(d)(2). See Spielberg v. Barnhart, 367 F. Supp. 2d 276, 283 (E.D.N.Y. 2005). Instead, more weight should be granted to those treating physicians who examined plaintiff consistently throughout his insured status and whose "conclusions were based on observations more linked to plaintiff's daily activities than were those of [one-time examiners and consultants]." Id. At bottom, it appears the findings of plaintiff's treating doctors should have been accorded controlling weight when the ALJ was evaluating medical evidence.

12

Further, the regulations require the ALJ to "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion." Id. (citing 20 C.F.R. § 404.1527(d)(2)). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell, 177 F.3d at 134 (citing Schall v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)). The Second Circuit has echoed time and time again that district courts should "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion." Halloran, 362 F.3d at 33. Indeed, the Circuit has noted that it would "continue remanding when [it] encounter[s] opinions from ALJ[s] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. The ALJ failed to provide good reasons here, and, consequently, remand is required.

The ALJ committed another legal error in assessing plaintiff's statements about the nature of his injuries. It is true that a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a). Instead, "[a] claimant's subjective pain may, when supported by other facts, establish that a claimant has a disability. The claimant's testimony regarding subjective pain must be supported by signs and laboratory findings which show that the claimant has a medical impairment which could reasonably be expected to produce the pain." Woodford v. Apfel, 93 F. Supp. 2d 521, 530 (S.D.N.Y. 2000) (citing 20 C.F.R. § 404.1529(a)). However, "objective findings are not required in order to find that an applicant is disabled" and subjective pain on its own *may* establish disability. Green-Younger, 335 F.3d at 108. (citing Donato v. Sec. of Dep't of Health and Human Servs., 721 F.2d 414, 418-19 (2d Cir. 1983)).

13

In assessing the evidence before him, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the [ ] residual functional capacity assessment." In cases such as this, where the symptoms the claimant complains of are greater than the restrictions that can be demonstrated by objective medical evidence, the Commissioner should consider additional factors including: the claimant's daily activities; the nature, location, onset, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication that the claimant has used to alleviate his symptoms; other treatment for pain relief or other symptoms; any measures which the claimant uses or has used to alleviate his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). In that vein, plaintiff testified that his symptoms included "a lot of pain… in the lower back, left ankle, [his] left shoulder, right ankle, left shoulder and also… [his] left knee [due to cane usage]" and that various pain medications helped him, but some did have side effects including drowsiness and dizziness. (Tr, 462, 464).

In finding that plaintiff was not disabled, the ALJ cited reports of both treating and consultative physicians noting that plaintiff's condition had improved, his medical treatment had been conservative, his medications were not unusual nor did they produce any side effects, and that he engaged "in a reasonable range of daily living activities" and that he was "independent in self care." (Tr. 22). The ALJ's decision also noted that plaintiff was "capable of sitting for extended durations" and that "his daily routine involve[d] taking walks, watching television, using a home computer, and socializing with friends." (Tr. 22). However, plaintiff's ability to engage in such activities does not preclude a finding of disability since "people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v.

Apfel, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that a claimant need not be an invalid to be found disabled under the Social Security Act.") (quotation omitted). Additionally, the ALJ did not apparently take into account plaintiff's complete testimony, which revealed that he did in fact have difficulty with daily activities – he needed assistance with showering, dressing, and cooking, and could no longer drive. (Tr. 466-68). The ALJ must address "all pertinent evidence" and his "failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." Calzada v. Astrue, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010). In any event, it is not apparent that the ALJ fully weighed these factors in assessing claimant's activities. Cf. Id. (finding that because the ALJ took heed of the fact that plaintiff's symptoms could have been more severe than was possible to show through objective medical evidence, he had considered whether plaintiff's symptoms were credible). Remand is required as a result.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied and Sofronis's cross-motion is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Memorandum and Order, see Schaal, 134 F.3d at 505, given that the ALJ's determination was based on an erroneous application of the regulations and guidelines.

The Clerk of the Court is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
August 15, 2011

s/ENV

ERIC N. VITALIANO
United States District Judge